FILED 05 OCT '12 14:22 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WELLS FARGO BANK, N.A.; )
 )
                    Plaintiff, )    Case No. 6:11-cv-06248-HO
 )
                    v. )    ORDER
 )
ANDREW G. CLARK; )
 )
                    Defendant. )
_____ )

### **Introduction**

Currently before the court are: defendant's (Clark): Motion for Separate Trial [#102], Motion to Refer [#103]; Motion to Enter Audio Recording [#116]; Motion to Enter Correspondence [#117]; Motions to Compel [#118; #119; #130]; Motion to Unseal [#124]; and Motion to Suspend [#131] and plaintiff's (Wells Fargo) Motion for Summary Judgment and for Entry of Permanent Injunction [#105]; and Second Motion for Contempt [#113].

### **Background Summary**

Plaintiff, Wells Fargo, employed defendant Clark as a Home

ORDER - p.1

Mortgage Consultant from September 1, 2009, until he was terminated for "repeated unprofessional conduct" on June 28, 2011. [#1-pp.4-5]. Defendant subsequently launched a website which publicly disclosed some of plaintiff's trade secret and confidential information.

Plaintiff filed a Motion for a Temporary Restraining Order which the court granted on August 10, 2011. [#10]. After oral argument on August 22, 2011, the court granted plaintiff's Motion for Preliminary Injunction which, *inter alia,* enjoined defendant from further disclosure of plaintiff's trade secret and confidential information and ordered him to return any and all documents containing plaintiff's trade secrets and confidential information. [#23].

On November 3, 2011, plaintiff filed a Motion for Contempt [#32], which was denied in part and granted in part – both at oral argument and in a written order, the court warned defendant that he was prohibited from re-posting any confidential material and must limit his communications to plaintiff's law firm in Portland, keeping those to a strictly professional tone. [#72].

## Discussion

### 1. Plaintiff's Motion for Summary Judgment and Permanent Injunction [#105]:

Plaintiff moves for summary judgment on its First[1], Second[2] and

---

[1]  Plaintiff's First cause of action seeks injunctive (continued...)

Third[3] causes of action and requests that the court issue an order making permanent the existing preliminary injunction. [#105].

a) Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

However, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must produce specific facts, as provided by Rule 56(e), showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding

---

[1] (...continued)

relief enjoining defendant from using or disclosing the confidential information he misappropriated, requiring that he identify the trade secrets and confidential information in his possession and those to whom he had disclosed that material; ordering him to return all originals and copies of the material and preserve all electronic files that contained any confidential material or trade secrets. [#1-pp.9-11].

[2]    Plaintiff's second cause of action seeks declaratory judgment against defendant on plaintiff's claim of misappropriation of trade secrets and an award of compensatory damages and attorney fees. [#1-pp.11-12].

[3]    Plaintiff's third cause of action seeks declaratory judgment against defendant for breach of contract and an order enforcing specific performance of the contract. [#1-p.13].

summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002). Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

While *pro se* litigants are not held to the same standard as attorneys, a *pro se* litigant is not entirely immune from the civil rules of procedure. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987). Although the court must construe the pleadings liberally, *pro se* litigants must follow the same rules of procedure that govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.1995) ("Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure."). Because this is a motion for summary judgment which if granted will dismiss the action, the court has given defendant notice as required under *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir 1987) *overruled on other grounds* 154 F.3d 952 (9th Cir. 1998)(en banc).

(b) Undisputed Facts:

The following undisputed facts are gleaned from the pleadings and previous testimony:

(1) Defendant worked for plaintiff from September 1, 2009 until plaintiff terminated his employment on June 28, 2011.

(2) Upon beginning his employment with plaintiff, defendant executed an employment agreement with plaintiff which contained a

ORDER - p.4

section entitled "Confidential and Proprietary Information[4]."

(3)  At that same time, defendant also executed an agreement with plaintiff regarding trade secrets and confidential information in which he agreed to use the confidential information "solely and exclusively for the purpose of conducting business on behalf of the Company.".  [#106-pp.3-4; #4-Ex.2].

(4)  Defendant was formally disciplined by plaintiff for misuse of Wells Fargo's email systems and unprofessional behavior in the workplace beginning on June 2, 2011 and continuing through June up to and including his termination on June 28, 2011.  [#106-pp.4-5; #4].

---

[4]  The clause stated:

(a) Employee [Clark] agrees that all file materials and information of Employer [Wells Fargo], including, but not limited to loans, accounts, contracts, data, records, appraisals and comparable appraisals, financial information, software, customer leads and lists developed and/or delivered to Employee by Employer, product information, strategic business plans, business methodology and processes, and cost and pricing policies are confidential and proprietary information (hereinafter "INFORMATION") and the sole property of Employer.  All INFORMATION shall remain the property of Employer, even if Employee terminates his/her employment, whether voluntarily or involuntarily.  Upon notice of termination, Employee's physical taking or removal of the actual file materials and/or INFORMATION, including but not limited to loan files, from Employer's premises shall be a material breach of this Agreement.

(b) Employee further agrees to: 1) maintain the INFORMATION in confidence; 2) use an appropriate degree of care to maintain the INFORMATION as secret; 3) use the INFORMATION only in the course of his/her employment with Employer; and 4) deliver to Employer all notes, copies, packages, computer discs/drives/storage and all other materials containing any portion of the INFORMATION at Employer's request.
[#106-p.3; #4-Ex1-¶II].

(5)   Immediately following his termination, defendant filed a whistle-blowing complaint with the Department of Labor which was dismissed on August 9, 2012.  [#107-Ex.3].

(6)   On or about August 2, 2011, plaintiff became aware of defendant's website[5] entitled Wells Fargo Homepage Crimepage which contained links to documents containing private customer information including Wells Fargo customer names, addresses, loan numbers and other confidential information.  [#3-Ex.4].

(7)   The court issued a temporary restraining order on August 10, 2011. [#10]

(8) Defendant temporarily removed the confidential information but did not comply with the rest of the court's order requiring him to return plaintiff's documents and disclose the identity of the persons and websites to whom he communicated the confidential information. [#106-pp.7-8].

(9) As a result, plaintiff sought a preliminary injunction which, after oral argument by both parties, the court granted on August 23, 2011. [#23].

(10)   By September 9, 2011, defendant had removed all of the confidential information from his website.  [#35-¶6].

(11) On October 11, 2011, plaintiff discovered that defendant had re-posted all of the information subject to the preliminary

---

⁵   At oral argument defendant admitted that he created and maintained this website.

injunction and specified in plaintiff's September 13, 2011, letter
to defendant. [#107-Ex.4 Lively Decl III].

(12)  On November 3, 2011, plaintiff filed a Motion for
Contempt and Order requiring defendant to comply with standards of
professionalism in all communications.  [#32].

(13) In light of defendant's *pro se* status the court denied
plaintiff's Motion for Contempt however, defendant was sternly
admonished by the court both orally and in the court's written
order.  [#70; #72].

(14) Defendant has recently resumed sending inappropriate and
offensive emails, letters and faxes to plaintiff's counsel, to his
former manager and to other clients and offices of plaintiff's
counsel.

   (c)  Permanent Injunction:

To be entitled to a permanent injunction, the party seeking the
injunction must actually succeed on the merits. *Amoco Prod. Co. v.
Village of Gambell,* 480 U.S. 531, 546 n.12 (1987).  The party must
also show that there is no adequate remedy at law.  *Continental
Airlines v. Intra Brokers, Inc.*, 24 F.3d 1099, 1102 (9th Cir.1994).
If there is the possibility of future wrongful conduct, a legal
remedy is inadequate.  *Orantes-Hernandez v. Thornburgh*, 919 F.2d
549, 564 (9th Cir.1990).

In seeking a permanent injunction, Wells Fargo must
demonstrate: (1) that it has suffered an irreparable injury; (2)

ORDER - p.7

that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy

in equity is warranted; and (4) that the public interest would be

served by a permanent injunction. *eBay Inc. v. MercExchange, LLC.*,

547 U.S. 388, 391 (2006).    The decision to grant or deny permanent

injunctive relief is within the equitable discretion of the district

court. *Id.*

     Protected trade secrets are defined by state law as:

     "information, including a drawing, cost data, customer list,
     formula, pattern, compilation, program, device, method,
     technique or process that:
          (a) Derives independent economic value, actual or
     potential, from not being generally known to the public or to
     other persons who can obtain economic value from its disclosure
     or use; and
          (b) Is the subject of efforts that are reasonable under
     the circumstances to maintain its secrecy.

ORS 646.461(4).

     I find that the confidential information at issue in this

matter are protected trade secrets. *IKON Office Solutions v.*

*American Office,* 178 F.Supp.2d 1154, 1167 (D.Or.2001), aff'd, 61

Fed.Appx. 378 (9th Cir.2003)(list of customers can constitute a

trade secret); see also 15 U.S.C. §§6801-09 (Gramm Leach Bliley

Act).    There is no genuine issue of material fact regarding

defendant's misuse of plaintiff's trade secrets or his breach of his

employment contracts - his employment agreement and his

confidentiality agreement.

ORDER - page 8

A financial institution is legally prohibited from disclosing nonpublic personal information to a non-affiliated third party.   15 U.S.C. §6802.   Such disclosure may subject the financial institution to enforcement actions under subtitle B of the Consumer Financial Protection Act of 2010, by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission.   15 U.S.C. §6805. Defendant's publication of confidential customer information therefore not only exposed plaintiff to adverse enforcement action(s) but also to loss of reputation and customer good will.

Defendant has clearly demonstrated an unwillingness to cease his website publications even after this suit was filed and a preliminary injunction was issued.   Absent permanent injunctive relief, plaintiff would be forced to repeatedly file suit every time defendant republishes this confidential information.   *Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th Cir.1994)("the multiplicity of suits necessary to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity").

Furthermore, the balance of hardships weighs strongly in plaintiff's favor.   Defendant has no legitimate interest in publishing the confidential information.   I find that without permanent injunctive relief, plaintiff will suffer irreparable harm to both it's reputation and it's consumers' privacy as a result of

defendant's continued publication of confidential customer information. Thus, the public interest is well served by the issuance of a permanent injunction preventing such misappropriation and publication. *T-Mobile, USA, Inc., v. Terry,* 2012 WL 1409287, *10 (2012).

For the reasons stated above, the following permanent injunction is therefore entered:

1. Defendant Clark, and all others in active concert or participation with him and who received actual notice of this Preliminary Injunction, are permanently enjoined from directly or indirectly using or disclosing to any third parties, plaintiff Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries. This specifically includes removing Wells Fargo's trade secrets and confidential information, such as any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries, from any public forum, including any website, on which defendant has posted or disclosed this confidential information.

2. Within a reasonable time (not to exceed ten business days), of receiving actual notice of this Injunction, defendant shall identify in writing to plaintiff all of it's secrets and confidential information remaining in his possession, custody, or control, specifically including, but not limited to, any information

ORDER - page 10

concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries.

3.   Within a reasonable time (not to exceed ten business days), of receiving actual notice of this Injunction, defendant shall give plaintiff written notice of the identity of any person, entity, or destination, including but not limited to internet websites, to which defendant transmitted, posted, or communicated Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries.

4.   Within a reasonable time (not to exceed ten business days), of receiving actual notice of this Injunction, defendant shall immediately return by certified mail to plaintiff's counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., all originals and copies of paper documents containing or constituting Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries.

5.   Defendant shall preserve all electronic files containing or constituting Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries, that are stored on any electronic storage device in his possession, custody, or control.

ORDER - page 11

(d) Plaintiff' Second Motion for Contempt Order [#113]:

Plaintiff moves the court for an order finding defendant in contempt of the court's previous order [#72], and requiring defendant to comply with standards of professionalism in all his communications with Wells Fargo and its counsel. [#113]. In support of its motion, plaintiff asserts that despite repeated warnings, defendant is willfully ignoring the court's direct order to limit communication to plaintiff's Portland firm and to professional content.

Specifically, plaintiff alleges that on January 31, 2012, two weeks after the court's order was issued, defendant resumed sending voluminous, numerous[6] faxes that have little to no bearing upon this proceeding or any other legal issue between plaintiff and defendant, to Ogletree Deakins offices other than that of plaintiff's counsel in Portland, Oregon. [#115- p.2, ¶¶3-4]. Subject lines of defendant's communications include, "What the Hell is wrong with you people?" and "Nuclear Attacks and Deathcamps[sic]," and the content includes language such as, "I hope what you did to me happens to you or your kids. I really do so you can FEEL it. But…I will do all I can to ensure you feel it. You will suffer as you made me. You are all sick animals and you must all be dealt what you dealt to me." [#115- Ex.2].

---

[6] From February 1, 2012, to August 20, 2012, Clark sent more than 200 combined emails and faxes to Ogletree Deakins. [#115- ¶4].

ORDER - page 12

Further, on February 3, 2012, Ms. Lively reviewed defendant's website of www.wfopsreport.com and determined that customer information remained linked to the website. [#115-p.2,¶ 6]. That same day, Ms. Lively sent defendant a letter directing him to immediately remove the customer information and also instructing him to cease sending correspondence to other than the Portland, Oregon offices of counsel in this case. [#115-Ex.3]. On or about February 8, 2012, Ms. Lively determined that the customer information had been removed from defendant's website. [#115-p.2,¶ 8].

However, on March 2, 2012, defendant sent Ms. Lively an email stating, "Due to the gruesome death scene involving a cal poly attorney and the fixation of emotional control as a substitute for Evidence, I was compelled to Create just yesterday the above Video production featuring the Beatles as theme music[,]" along with a link to a Youtube.com video. [#115-Ex.4]. On several occasions prior defendant had referred to Ms. Lively's graduation from Cal Poly (as listed on her firm biography). [#115-pp.2-3,¶ 10 and Ex. 5]. Ms. Lively, in viewing the link, saw a scene depicting a woman impaled in the chest with the caption "Cal Poly law graduate." [#115-p.2,¶ 9]. Defendant's current website www.osunriseusa.com, refers to "Bitch of the Week, from Cal Poly Law School and Brothel: Ms. Leah Livelinsky[,]" as well as other offensive statements. [#115-Ex. 6].

On March 17, 2012, defendant sent an email to at least two

attorneys at Ms. Lively's former law firm as well as to attorneys at various other firms in Portland. [#115-Exs. 7, 8]. On April 13, 2012, defendant sent a fax to Alan Martin (his former manager at Wells Fargo), and to Wells Fargo Employee Relations Manager, Tim O'Hara, telling Mr. O'Hara to "get on it," discussing court and filings, and stating "seems that is just one more way that courts 'screw' the citizen." [#115-Ex. 9].

That same day, Ms. Lively sent defendant another letter reminding him to only communicate with counsel of record and in a professional manner. [#115-Ex. 10]. However, on June 20, 2012, defendant refused to limit his communications saying "I do not owe you people any particular style of communications"; threatened to start certified mailings to plaintiff's external board and faxed Wells Fargo Executive Vice President, Patricia Callahan, complaining about his termination. [#115 Exs. 11;12]. On June 25, 2012, plaintiff sent defendant a letter delineating his specific inappropriate communications, reminding him of the court's order, and informing him that if he did not cease violating the Order, Wells Fargo would move for an order of contempt. [#115- Ex. 30].

On or around July 19, 2012, defendant sent his former manager Alan Martin, a package that contained highly offensive and inappropriate statements concerning Mr. Martin's alleged personal life and making offensive criminal accusations against Mr. Martin. [#108-Ex.1].

ORDER - page 14

On July 31, 2012, Clark sent three emails directly to Ms. Lively's administrative assistant (not copying Ms. Lively or any other lawyer), soliciting her to "[c]onsider switching your affiliations. View my material posted, all first hand…Stop putting out for the Warmongers and Criminals who Profit from War of any kind…including Ogletree Deakins[,]" and "If you want I can send you Professional looking Trifold marketing brochures to distribute via our interoffice mail. I am working on postcards mailed to all Ogletree Deakins staff nationwide announcing the Plans." [#115-Ex.13]. Defendant followed this with a vaguely threatening email to Ms. Lively stating,"You freaks are going down. There will be nothing left. You will be living in tents eating bugs for what you did. Ms. Lively: get ready for buying clothing at the Salvation Army Counters after the 5 year stretch. . . . Such is the War of the Apocalypse. I told you: RAND Parents. Strat Ops….blah blah, all true." [#115-Ex.14].

On August 8, 2012, defendant sent Ms. Lively another threatening and vulgar email. [#115-Ex. 15]. The same day, defendant sent Ms. Lively another more offensive email. [#115- Ex. 16]. On August 22, 2012, defendant sent Ms. Lively an email entitled "I made Wells Fargo contact" in which he stated "I made Executive VP contact out of San Francisco . . .". [#115-Ex. 17].

In the last three weeks of August alone, defendant sent faxes to at least three different external clients of Ogletree Deakins,

(none of which have any connection to Wells Fargo or this case), as well as at least ten faxes to at least six different offices of Ogletree Deakins.  [#115-Ex. 18].  After plaintiff filed its Motion for Summary Judgment on August 22, 2012, defendant responded by sending Ms. Lively eight separate, unprofessional e-mails as well as multiple faxes to Ogletree Deakins offices in Atlanta, Georgia, Columbia, South Carolina, and Greenville, South Carolina.

Contempt power inherent in Article III courts, gives district courts the power to hold in civil contempt, any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act.  *Michaelson v. U.S. ex rel. Chicago, St. P., M., & O.R. Co.,* 266 U.S. 42, 65-66 (1924);see also *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983).

Civil contempt, a remedial punishment, is for the benefit of the complainant, whereas criminal contempt is a punitive measure to vindicate the court's authority.  *Gompers v. Bucks* 221 U.S. 418, 441 (1911).  Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial.  *In re. Sepquoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281, 1283 (9th Cir. 1987).  Criminal contempt is a completed act of disobedience; the sentence is punitive to vindicate the authority of the court.  *Id.*

Under Oregon law, "[t]he power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power."  ORS 33.025(1).  A "contempt of court" includes willful

disobedience of a court's orders.  ORS 33.015(2)(b).  The remedial

sanctions authorized include *inter alia,* confinement of not more

than six months or payment of all or part of any attorney fees

incurred by a party as the result of a contempt of court.  ORS

33.105(b)and (e).  Compensatory sanctions may be paid to the party

moving for contempt to compensate for injuries resulting from the

contempt.  *General Signal v. Donallco,* 787 F.2d 1376, 1380 (9th

Cir.1986).  The amount of compensatory sanctions is determined by

the actual costs incurred by the moving party.  *Id.*

The court has both orally and in a written order, instructed

defendant of the seriousness of his actions and sternly reminded him

that subject to the injunction ordered by this court, he is not to

re-post any confidential material, is to limit his communications to

plaintiff's counsel's firm in Portland and to keep those to a

strictly professional tone.  [see e.g., #72].  Plaintiff's first

Motion for Contempt [#32] was denied however, defendant was reminded

that the court would not treat any further violation of its orders

lightly.

Defendant has repeatedly, willfully ignored the court's

admonishments regarding professional communications as well as the

court's orders prohibiting his publication of plaintiff's trade

secrets.  Similarly, defendant has continued to communicate with

plaintiff's counsel in a harassing, vulgar and threatening manner,

willfully ignoring reasonable requests to conform his communications

ORDER - page 17

to a professional standard.

Plaintiff's Motion for order of Contempt is therefore granted. Defendant is ordered to pay reasonable attorney fees and costs that plaintiff has incurred from it's second motion for contempt. Plaintiff will prepare a detailed bill of costs and submit it to the court to enable determination of the amount of defendant's compensatory sanction.

## Conclusion

As stated above, plaintiff's Motion for Summary Judgment and for Entry of Permanent Injunction [#105] is GRANTED to the extent detailed above.  Plaintiff's Second Motion for Order of Contempt [#113] is GRANTED.  All other pending motions are DENIED as moot.

IT IS SO ORDERED

DATED this   _5 ⅞_   day of October, 2012.

UNITED STATES DISTRICT JUDGE

ORDER - page 18